25-783CR, United States of America v. Victor Gavalo. Good morning, Mr. Maynard. Good morning. May it please the Court. Yongchun Lee, Federal Defenders for Appellant Victor Gavalo. We're here for another installment of the Sentencing Tale Wags the Offense Dog. The government secured an indictment and a guilty plea for Mr. Gavalo, possessing ammunition, and then at the time of sentencing asked the judge to punish him as he tried to commit first-degree murder. And it did so, of course, not by actually presenting a first-degree murder kind of prosecution. Right. But we had a video, and the judge has to make factual findings, and he's allowed  In fact, he's required to make factual findings. Yes, Your Honor. So I take it that your complaint here is that the factual findings were clearly erroneous, right? Well, you know, we could dispute the — we don't need to get into standard review. Our view is that under any standard review, clear or abuse of discretion, the — Okay. Let's say de novo, the most deferential. Right. So our view is — But that's the beef, right? That's right. Is that there's not enough evidence that your client was trying to kill anybody in a premeditated way. The people he got out of the car and started shooting at, he wasn't trying to kill them in a premeditated way? That's right. So the only — the principle dispute we raised, right? So, you know, the — there are two different cross-references. It could be an attempt at second-degree murder and an attempt at first-degree murder. Right. And it's much higher if it's first-degree. That's right. So the judge found attempt at first-degree murder — So just answer me this. Yeah. Who waits at a green light, loitering at a green light, period, unless they're maybe just idly checking their phone? Well, there you go, Your Honor. But the evidence is that he stops — Well, there you go, Your Honor. The odds is — That's one possibility, right? Well, right. But what are the odds, then? It seems preposterously high that he just happened, for example, to be idling at the green light, looking at his phone, and when he finally looks up and sees it's green, instead of going, he says, let me get out of the car and fire shots into the car behind me. So you're — If that's your counterargument, you're hypothesizing a — he was distracted. No, I'm not — No, I'm not. That seems — I understand, Your Honor. So let's just — The framework is that the government bears the burden of proof, right? Yeah, yeah. It's because of their attempt to just — to basically treat him as a first-degree murderer through sentencing, it's a lower standard of proof. I get that. But still, preponderance is it's more likely than not. This video on its face, okay, is — it doesn't select out a premeditated killing, a shooting, as opposed to an impulsive or reactive shooting. What is the — So that's the difference — What do we do about the fact that he had a gun with him? I'm sorry, Your Honor? He brought a gun to the scene. So this is a kind of an odd twist of this case. Usually it's a bad fact that, as the government said, Mr. Cavallo is regularly armed. That's the government's quote. That's usually a bad fact for clients, right? But in this case, the fact that he had a gun is not a selector, that, you know, he had a gun two different occasions, I think, within this incident. And so the government says he's regularly armed. And so the fact that he's armed is not like, you know, I'm not regularly armed. So if I brought a gun to him — So then, the guy who's finding himself conveniently armed, let's say he drives by, he sees the grayality, and he thinks, oh, those are the people — I don't know, fill in the blank, I hate. And then he — Yes. I hate. Yes. And then he pulls up ahead, and it shows that he waits at a green light, waits for them to pull out, and then he comes out and starts shooting them. Isn't the waiting evidence of premeditation, that he was waiting for an opportunity? Because you can wait and premeditate for a year — Sure. — chewing on this, or you could be waiting and premeditating for some other shorter period of time. Sure. Respectfully — So if you lie and wait, which is what — Yes. It's actually in the statute. Lying and wait is a way of committing first degree murder. I mean, if you lie and wait, you pull up to the green, you wait for the car to pull out, you're also blocking the intersection so that if they do pull out, you know, the lane is blocked.  Why is that lying and wait not enough for the court to conclude that there was premeditation? He was thinking about this. He was thinking that I can't wait for them to pull up behind me. Respectfully, Your Honor, you know, there's a lot of speculation in there about what's happening. To use the word wait is to assume the conclusion, to form a circular reasoning. We don't know. But there's a green light. There's — Your Honor — That's strong evidence that he was waiting because when one sees a green light, one goes. Your Honor — And if someone is very — doing something very unusual and atypical, which is not going at a green light, why does that not allow a rational inference that the person was purposely not going? So —  There are reasons. Look, let's say that it's not — you know, you drive around New York, people are stopped at a light. Sometimes they're distracted. There's phones. Maybe they're asleep. Whatever else. Okay? There's a lot of possibilities for that. Until the — if you just look at the video. Again, that's all we have. No back story. We don't know who these people are, why the script. If you look at the video — Well, we do have something more. Didn't the district court make a fact-finding that there was coordination between the defendant and individual one? Respectfully, no, Your Honor. That's not what the district court — so this is actually exactly right. So the district court — The district court did not rely on that fact in finding premeditation, but it found that as a fact. It did. So, well, this is where we have to be a little bit careful here, right? What the district court specifically found was that there was no prior communication. The government had tried to create a narrative that there was a phone call before the shooting, that like this was like a real setup hit. The district court rejected that finding because the government didn't produce any phone records. We don't know who anybody was on the phone for. All the district court found was that — and again, you know, I'm not going to stand here and say that they don't —  The district court found that they knew each other. They knew each other. Okay, but — But there's still — there's still a big leap between knowing each other and contemplating cold blooded murder. No, I agree. But the question is, is at what point? So we have the fact that he had an arm that he saw. Yes. We had the fact that he waited. We fact that he exited and drew his gun almost immediately. Yes. We have Mulder saying the fact that he kept shooting after being shot is also evidence of premeditation. And we had individual one. Yes. And the fact that they knew each other. Yes, Your Honor. The question for me is not — just did he wait at the green light, which is, you know, pretty powerful, but what do we do about all of those things together? Your Honor, I would say it once again, that none of these facts select out — the only dispute that we're having here is whether it's a premeditated murder or an impulsive or reactive murder. Well, let me focus on that. I mean, premeditation famously is a virtually nonexistent standard, right? Judge Cardozo in —  in your Court of Appeals said no time is too short for an evil man to premeditate. How long do you have to premeditate? Suppose we take your theory, which I take to be your theory, that what may have happened here is that he's paying attention to his phone, he's not paying attention to the light, the light turns green, he's still sitting there playing with his phone, he hears the guy behind him honk his horn, and now he's mad. And he gets out of the car and decides what he's going to do is shoot the people in the car behind him. Yes. How long does he have to think about it for it to be premeditated? Premeditation does not — a very short — it's not a matter of time, Your Honor. We don't — Exactly. It's not a matter of time. But nonetheless, Your Honor, Justice Cardozo, as Your Honor pointed out in Jackson, said the distinction is — is hard — two things are hard to distinguish between the intent to kill and premeditate. Yes. But they still exist under the law, right? Yes. But how — but so what is it that — why couldn't a court perfectly well distinguish or very well find that in the time between hearing the horn honk and getting out of the car, and instead of going and yelling at a person or punching them or something like that, he takes his gun out and decides that what he's going to do is kill them? Your Honor — Why is that not enough to be premeditation? Your Honor, you know, outside of this courtroom, it's a good guess. We're in this court of law, and the — the — the finding has to be by a preponderance. It's speculation. It is otherwise known as a reasonable inference that more likely than not — Well, this is our dispute, Your Honor. Our dispute is it is not more likely than not, that the government has to prove that if you just look at the video — okay, so if you slice it up, let's — I would give you two ways to think about this, and all the evidence, that if you — if you stop the video at the point before he gets out, there's no way anybody can predict what's going to happen, right? It just — all the facts are entirely consistent with one another. And then — and then we continue the video and look at everything else, stopping everything else. I still maintain at that point, we still don't know that he had this moment of reflection, that he thought about COVID-19 murder, got out and started shooting. Again, that's one possibility. I guess I'm not sure where that goes. I mean, if he had been in his house, and the video didn't capture him in the house, and he had secretly been having a conversation with six co-conspirators about how I have waited a year for this moment to come kill the people in the gray Audi and outcomes, we would still be in the situation you're describing, where, you know, we don't know what was going on in the first part. Just — we don't know what's going on in the house. We don't know what's going on in the gray Audi. All we know is he came out and shot them. That — I don't understand how that gets us anywhere, because the fact is, we do have him in the car, waiting at the green light, and we do know what he did afterwards, which usually someone intends what they do. So if we had only him sitting in the car, you know, nine million people are probably every day sitting in a car in New York, and they're not planning to kill someone. But this guy got out, walked towards the car, started opening fire, gets hit, and still keeps shooting. Why is that not the great window into what was going on to — in his mind, what he wanted to do? Again, Your Honor, there are other possibilities besides a premeditated killing. And it's — the video itself, it just doesn't tell you that maybe — look, whether he was asleep at the wheel and then got out and just started shooting, or whether, you know, whether he knew the people, he got panicked and reacted. It's — Then maybe the issue is you need to explain to us what you think preponderance of evidence means. Preponderance of the evidence, as we said, is more likely than not. And our submission — again, we're not saying that, you know, that other aspect that this is a terrible thing that happened, that he shot, okay, and that he should be punished for this. All I'm saying is that this is not first-degree murder, the most grievous offense under federal law. You only got eight years. Your Honor, that's actually kind of — I have to say, when you really widen the lens here, I think it's amazing for him. He only got eight years for pumping this car full of bullets. And granted, he didn't kill anybody. But it sounds to me like he got off pretty easy here in the grand scheme of things. So why don't we hear from the government? You've reserved two minutes for rebuttal. MEGAN LARKIN May it please the Court, my name is Megan Larkin, appearing on behalf of the United States. The District Court did not err in applying the sentencing enhancement for attempted first-degree murder based on her finding that the appellant's shooting was premeditated. There is ample evidence to support the District Court's finding of premeditation. JUDGE FRANKLIN Can you tell me what you think the strongest fact is? MEGAN LARKIN To answer clearly, I'll say that I think waiting at the green light for 30 seconds is the strongest fact. But I do want to address, there are three — there are three instances where we can see premeditation, where we can see that reflection. And it's not just waiting at that green light for 30 seconds. There was reference to if we stopped the video at the point before he got out of the car, what do we see? And at the beginning of the video, if you look at the very beginning, you see the appellant pull up in the SUV at the corner of 41st Street and 35th Avenue. And you see him waiting there for about 40 seconds before even turning down 35th Avenue as the victims in the Audi go down to the Audi. So there's a 40-second span there that we didn't — we haven't even addressed. You have that. You have the 40 seconds at the beginning of the video. You have the 30 seconds at the green light. And then, frankly, as Your Honor noted, you have the continuing to fire. He gets out of the car. Within a second, he pulls the trigger. And then he's — JUDGE FRANKLIN So is that for the intent — do you think that does more work for the intent to kill or whether or not it does more for premeditation? MS. GARRETT I think that the — to be — to answer your question clearly, do you mean the multiple firings or — yeah, so the multiple firings, I think it goes to both. Certainly with specific intent to kill, the case law is very clear that shooting at close range multiple times is highly probative. But in this case, to see him get out of the car, continue walking, and continuing to shoot, that aligns with the premeditation case law on pausing. There are cases — I believe there's a — it's a U.S. Supreme Court case, U.S. — it's Fisher v. United States, where the Supreme Court says — well, they affirm a jury instruction that talks about even a pause is enough time for reflection. And that's exactly what we see here. He gets out. He — I assume wasn't expecting that return gunfire to be hit on him. He's hit, and he continues to fire. So even that walking towards the car, getting hit, and continuing to fire goes to premeditation in terms of the pause and the — and, frankly, the short amount of time that is needed to show that one is actually reflected on what they're doing. And so there are those three instances, I think, that we can find premeditation. And I want to talk about Individual 1 as well. Individual 1 — we don't even have to think about anything that Individual 1 did, because the appellant's actions alone are enough to show that they were deliberate, again, based on waiting at the green light, basically stalking the victims down 35th Avenue, and then during the shooting, stopping and then continuing. But when you look at Individual 1, you also see that this was coordinated. Again, Individual 1 was traveling down the street at the same time as the appellant was driving down on 35th Avenue. You can see that on the video. You see that he starts to walk in the opposite direction before the appellant starts shooting. Now, it's very close, and you should — I'm sure your honors have done this, but if you go frame by frame, you can see — and this is — the district court acknowledges in the Fatico hearing. You can see that Individual 1 turns his body and starts to walk away before the appellant even takes that first shot. It was coordinated. Everyone knew exactly what was going to happen. Well, there's also what happens afterwards, right, which is that the defendant gets back in his car and goes somewhere, but then winds up turning up with a different car driven by Individual 1 at the hospital a few moments later, all of which would seem like a remarkable coincidence that your friend, who's not only willing — it's not a good Samaritan, necessarily, who's seeing this guy get shot and takes him to the hospital. There's this change of vehicle. Then Individual 1 comes back and picks up the gun on the street, which is sort of not what the good Samaritan does. You know, you're shot. I'll take you to the hospital. And by the way, it's your gun. I'll go back and get that for you. That does not seem to be a spontaneous action. That's right, Your Honor. And it was two minutes that he was back in his car picking up that gun. And what did we see him do to an actual good Samaritan? He menaced him. He chases him away. It appears to me from the video that he has the gun in his hand, and he points it at the gentleman who's standing at the intersection with his phone, seeing this gun in the middle of the intersection. And so, again, that suggests, again, this is not — he's not a good Samaritan. But, of course, the — the district court did not rely on any of the things that we've just discussed in making a finding. Some little — what do you think? Can we just supply our own fact findings based on our reading of the video and the fact finding that the district court did make, that they knew each other and drew further extrapolations from that? I don't think you need to. I think that the clearest way here is just to rely on what the district court has in her written ruling, which focuses on the appellant's actions here, with, in particular, the 30 seconds at the light and the walking out and continuing to shoot. However, I would say that, you know, there was some — some dispute in the briefing about whether it would be appropriate to think about the findings from the Fatico hearing. And I'll say that it is — it is pretty clear that the — the district court's written order was — was focused on the specific intent issue, since that was what was really being disputed down below at the Fatico hearing. And, in fact, if you look at the order, if you look at the — the last paragraph of the introduction and the first paragraph of the discussion, you see that the district court says that the government has proven specific intent. And it shows — it shows that. And if you look at the transcript of the Fatico hearing, you can see that she says premeditation is not really being — is not really in dispute. Defense says, well, yes, we actually dispute that, too. And she says, I think premeditation can be established on this record. So I think there's a bit of a combination of findings. However, I don't think you need to — you need to get there on this — in this case, given the appellant's actions. So if there are no further questions, I'll rest on the papers. Thank you, Your Honors. Thank you. Mr. Lee, you've reserved two minutes for rebuttal, if there's anything you'd like to add. But we'll keep it to two minutes. Yeah. I won't waste the Court's time. I'll just finish with — with Your Honor's comments at the end about the 96 months. You know, our argument is simply that the guideline range is higher than it — it should have been, and that, you know, Melina Martinez says that that's a reason — probably a different result in regards to that. And again, our perspective is that, you know, it's only in hindsight that the — this entirely sort of public activity of driving down the road at a normal speed, stopping the light, takes on a nefarious meaning of waiting. Okay? It's only in retrospect that you see that. And then nothing about this video, again, it selects out a premeditated murder of shooting as opposed to an impulsive, reactive one. And we think that any inference to premeditation to that is speculation and not a reasonable inference. But that's our position. Thank you, Your Honor. Thank you. Thank you very much to both sides. We appreciate your arguments today, and we will take the case under advisement. Thank you both.